DAKOTA GRAIN SYSTEMS, INC.,
Plaintiff and Appellant,

v.

Claire RAUSER, Defendant
and Appellee.

Raymond ZAJAC, Plaintiff
and Appellant,

v.

Claire M. RAUSER, Defendant
and Appellee.

DAKOTA GRAIN SYSTEMS, INC.,
Plaintiff and Appellant, ·

v.

RAUSER CONSTRUCTION, INC., Superior Systems Inc., and Claire M. Rauser, Defendants and Appellees.

Civ. Nos. 880004–880006.

Supreme Court of North Dakota.

Jan. 9, 1989.

Craft, Thompson & Boechler, Fargo, for plaintiffs and appellants; argued by David C. Thompson.

Conmy, Feste, Bossart, Hubbard & Corwin, Ltd., Fargo, for defendants and appellees; argued by Wickham Corwin.

MESCHKE, Justice.

We reject objections to a trial court's use of a special master's report of accountings pursuant to NDRCivP 53. We affirm.

Raymond Zajac farmed and sold grain bins; Claire Rauser erected grain-handling and storage systems. In 1981, Zajac and Rauser began Dakota Grain Systems to sell and erect grain bins. By oral agreement, Rauser contributed equipment and tools and Zajac contributed accounts receivable and inventory of lesser values to be adjusted later. Rauser, as manager, received both a salary and commissions on his sales; Zajac received commissions on his sales. Business was good but much of the income was used to pay past debts.

In 1983, after their relationship soured, Zajac sold the business to Rauser. In late 1983, a judgment resulted in seizure of the inventory by a creditor. Rauser then refused to complete his purchase. Zajac and his corporation, Dakota Grain Systems, Inc., sued Rauser and his corporations, Rauser Construction, Inc. and Superior Systems, Inc. The three suits were consolidated.

In the first suit, Zajac claimed Rauser was indebted to Dakota Grain Systems. Rauser's answer claimed that an accord and satisfaction and a novation barred recovery. Rauser counterclaimed for money and services contributed to Dakota Grain Systems. In the second suit, Zajac claimed that Rauser owed him for part of the purchase of a building for the business. Rauser's answer claimed that the debt was offset by other amounts and benefits and was satisfied by an accord and satisfaction. In the third suit, Zajac sought specific performance of Rauser's contract to buy Dakota Grain Systems or, alternatively, rescission and damages. Rauser's answer claimed breach of contract.

Both sides agreed to the appointment of a special master to make eleven accounting determinations. They selected a certified public accountant with experience as a bankruptcy trustee. The order of reference by the trial court was prepared by Zajac's counsel.[1] The order listed the eleven accounting items to be investigated and determined. It declared that the master "shall have all powers specified under Rule 53."[2] The order said nothing about procedure other than directing the master to

---

1. Another counsel represented Zajac on this appeal.

2. NDRCivP 53(c) describes a master's powers: "An order of reference to a master may specify or limit the master's powers and may direct the master to report only upon particular issues or to do or perform particular acts or to receive and report evidence only and may fix the time and place for beginning and closing the hearings and for the filing of the master's report. Subject to the specifications and limitations stated in the order, the masters have and shall exercise the power to regulate all proceedings in every hearing before them and to do all acts and take all measures necessary or proper for the efficient performance of their duties under the order. They may require the production before them of evidence upon all matters embraced in the reference, including the production of all books, papers, vouchers, documents, and writings applicable thereto. They may rule upon the admissibility of evidence unless otherwise directed by the order or reference and have the authority to put witnesses on oath and may themselves examine them and may call the parties to the action and examine them upon oath. If a party so requests, the masters shall make a record of the evidence offered and excluded in the same manner and subject to the same limitations as provided in Rule 103, NDREv, for a court sitting without a jury."

"proceed expeditiously with such meetings, hearings, accountings and the preparation of his report in accordance with directives set out under Rule 53...." The court reserved "the right to determine the legal effect of any and all transactions between the parties."

The master met separately with the parties several times. Neither party requested that the master keep a record.

After the master reported, Zajac timely objected to some of the accountings summarized in the report. For the most part, the written objections complained about evidence not considered and lack of documentation for some of the accountings. Those objections did not specify the lack of a transcript as a procedural error; nor did Zajac then request examination of the master about details of his report. Zajac moved, in general terms, "to reject said report in whole or in part, or in the alternative, modify said report upon hearing additional evidence, or in the alternative, recommit said report with instructions to the Special Master." *See* NDRCivP 53(f)(2).

At a separate hearing on the objections, Zajac sought to call the master for cross-examination about details of his report. The trial court refused to permit it, saying "[t]hat's just like cross-examining the Judge." The trial court ruled that the master's accountings were not clearly erroneous, disallowed the objections, and adopted the report subject to a later trial.

At trial, Zajac subpoenaed the master, again seeking to probe details of his determinations. Zajac persisted in arguing that the master failed to recognize some of Zajac's information, that the master failed to explain why the information was not used, and that some of the accountings were "unsupported by any documentation." The trial court permitted Zajac's counsel to examine the master, but did not permit questions about details of the master's determinations. The trial court ruled that further questions on accounting items were not timely because their correctness had been established when the hearing was held on Zajac's objections to the master's report.

In written findings, the trial court held:

"The report of the master, including each of the factual findings summarized therein, is well reasoned and substantiated. Despite the various objections ... no clear error on the part of the master has been established."

The trial court made other findings favorable to Rauser, "approved and adopted" the master's report, and used four of the accounting items from the report to order judgment for Rauser against Zajac for $13,827.21. Zajac appealed.

On appeal, Zajac's primary contention was that the master's report was defective because it did not document and explain all of its "conclusory" determinations. Zajac argued that a master must keep a record even without a request from a party. He further contended that the trial court surrendered its decision-making role to the master. Zajac asked that we reverse the trial court and remand "directing the court to utilize the alternative provisions of Rule 53...."

█ NDRCivP 53 is a special-purpose civil rule largely derived from FRCivP. It permits a trial judge to appoint someone as a temporary judicial officer to assemble, sort through and report on complex evidence. As in the federal practice, "reference to a master [is] ... the exception and not the rule." In a non-jury case, *"save in matters of account,* a reference may be made only upon a showing that some exceptional condition requires it." NDRCivP 53(b). (Our emphasis). Thus, the trial court properly chose to appoint a master for matters of accounting—the principal function of this special rule.

Zajac cited *U.S. v. Merz*, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964) as precedent that the master should have kept a record and better explained his report. In *Merz*, the United States Supreme Court considered a report of a commission appointed by a district court to determine just compensation in eminent domain proceedings. Under FRCivP 71A, the powers and procedures of such a commission are those of a master under FRCivP 53. The commissioners had made awards without ex-

plaining "which evidence the Commission credited and which it discredited" and, in part, going beyond their record of the evidence. The court of appeals affirmed in part but remanded for resubmission to the commissioners for explanation of the excessive part of its awards. The United States Supreme Court concluded that the reports "leave much to be desired" and that none of them "should have been adopted without more by the District Court." In reversing for resubmission or for resolution by the trial court, the Court expressed important thoughts about use of Rule 53 reports:

> "Conclusory findings are alone not sufficient, for the commission's findings shall be accepted by the court 'unless clearly erroneous'; and conclusory findings as made in these cases are normally not reviewable by that standard, even when the District Court reads the record, for it will have no way of knowing what path the commissioners took through the maze of conflicting evidence." 376 U.S. 192, 198, 84 S.Ct. 639, 643, 11 L.Ed.2d 629 (1964).

But *Merz* also expressed thoughtful advice for all of those concerned with a Rule 53 reference:

> "[L]aymen can be instructed to reveal the reasoning they use in deciding . . . what standard they try to follow, which line of testimony they adopt, what measure . . . they use, and so on. We do not say that every contested issue raised on the record before the [master] must be resolved by a separate finding of fact. We do not say that there must be an array of findings of subsidiary facts to demonstrate that the ultimate finding . . . is soundly and legally based. The path followed by the [master] in reaching [a decision] can, however, be distinctly marked. Such a requirement is within the competence of laymen; and laymen, like judges, will give more careful consideration to the problem if they are required to state not only the end result of their inquiry, but the process by which they reached it." *Id.* at 198–199, 84 S.Ct. at 643. (Footnotes omitted).

■ Thus, *Merz* recognized that the parties have an obligation to spell out required procedures in the order of reference. "An order of reference to a master may specify or limit the master's powers and may direct the master . . . to do or perform particular acts. . . ." NDRCivP 53(c). As in this case, masters are sometimes chosen for their expertise in other areas and are not always law-trained. We cannot expect such a master to adhere to legal standards of proceeding and reporting without clear instructions. As *Merz* said:

> "[T]he litigants have a responsibility to assist the process by specifying their objections to instructions, by offering alternate ones, and by making their timely objections to the report in specific, rather than in generalized form, . . ." *Id.* at 199, 84 S.Ct. at 643.

■ The record need not be the same in every case. As at a trial, each party must decide for himself what proof to offer, what documents to submit, and what record to make. Rule 53(c) says: "If a party so requests, the master[ ] shall make a record of the evidence offered and excluded in the same manner and subject to the same limitations as provided in Rule 103, NDREv, for a court sitting without a jury." As *Merz* emphasized, the parties are primarily responsible for making an adequate record. There was a complete record kept in *Merz*. Thus, only when a party has initially sought appropriate directions to the master, made a specific request to the master, or sufficiently spelled out objections to a master's report (or, when important, all three) can complaints about improper procedure be effectively considered by a trial court or by an appellate court. Zajac's then counsel took none of these essential steps to underlay his procedural objections pressed in this court.

■ "[I]n actions to be tried without a jury, unless otherwise directed by the order of reference," NDRCivP 53(f)(1) says that the master "shall file with the report a transcript of the proceedings and of the evidence and the original exhibits." Thus, ordinarily, a master should keep a record even without a request from a party. But

there are decisions under the federal rule that a party to a reference to a master cannot circumvent an unfavorable decision with an untimely challenge to the adequacy of the record. *Bynum v. Baggett Transportation Company,* 228 F.2d 566 (CA 5; 1956); *Levin v. Garfinkle,* 540 F.Supp. 1228, 1237 (E.D.Pa.1982); *In re A. Maggioli Co.,* 3 F.R.D. 86 (D.C.Mass.1943) ("In view of the absence of a transcript of evidence, unless the findings of fact of the master can be said to be clearly erroneous on the face of the report, there is nothing for this court to do except to accept and adopt those findings."). For a comparable reason, we reject Zajac's objection to a lack of a transcript in this case. We do not say that a record is unnecessary; as the rule recognizes, the order of reference can give specific directions about a record and a transcript.

■ Objections about evidence, as distinguished from objections about findings of fact, must first be made to the master. "Any other procedure allowing parties to remain silent while evidence is admitted or excluded before the master and to object for the first time when his report has been submitted ... would defeat the very purpose of reference." 5A Moore's Federal Practice, § 53.11, p. 53–104 (1988).

■ The trial court was obligated to examine the master's report. "Masters shall prepare a report upon the matters submitted to them by the orders of reference and, if required to make findings of fact and conclusions of law, they shall set them forth in their report." NDRCivP 53(f)(1). In a non-jury trial, "the court shall accept the master's findings of fact unless clearly erroneous." NDRCivP 53(f)(2).[3] "The

findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court." NDRCivP 52(a).

"In other words, if a [master's] report inadequately explicates the ... findings, the district court cannot tell whether the ... award is clearly erroneous. Consequently, this Court must conduct an independent review of the ... report and determine whether it sufficiently details the findings...." *U.S. v. 0.21 Acres of Land,* 803 F.2d 620, 622 (11th Cir.1986).

The transcript in this case shows that the trial court carefully examined the report. The trial court held a separate hearing on Zajac's objections to the master's accountings, but Zajac failed to convince the court that they were clearly erroneous. This master's report consisted of 96 pages with a separate narrative explanation page for each of the eleven accounting summaries. Thus, this master's report was not inadequate even though it did not contain some details that Zajac desired. The trial court not only concluded that the master's accounts were not clearly erroneous, but went further to characterize them as "well reasoned and substantiated."

Zajac's complaints here were generalized; he did not detail for us a single example of an inadequately explained finding accepted by the trial court. We are in no position to rule that the master clearly erred. Given the diminutive directions in this order of reference, the circumstances of this case do not require more than was done.

■ Zajac questioned that the master held separate, rather than joint, meetings with the parties.[4] Again, this was not one

---

**3.** NDRCivP 53(f)(2) describes procedure for use of the report:

"*In Non-jury Actions.* In an action to be tried without a jury, the court shall accept the master's findings of fact unless clearly erroneous. Within 10 days after being served with notice of the filing of the report any party may serve upon the other parties written objections to the report. Application to the court for action upon the report and upon objections thereto must be by motion and upon notice as prescribed in Rule 6(d). The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may

receive further evidence or may recommit it with instructions."

**4.** NDRCivP 53(e)(1) says:

"*Meetings.* Whenever a reference is made, the clerk shall forthwith furnish the master with a copy of the order of reference. Upon receipt thereof unless the order of reference otherwise provides, the master shall set a time and place for the first meeting of the parties or their attorneys to be held within 20 days after the date of the order of reference and shall notify the parties or their attorneys.... If a party fails to appear at the time and place

of the objections made to the master nor was it made to the trial court. Usually an issue cannot be considered for the first time on appeal. *See Lang v. Bank of North Dakota,* 423 N.W.2d 501 (N.D.1988). In any event, there is nothing in this record about the separate meetings to cause the master's report to be discarded. "Whenever matters of accounting are in issue before a master, ..." the master has more leeway in how he accumulates information. NDRCivP 53(e)(3).

■ Nor does this record dictate that we reverse to give Zajac an opportunity to examine the master about reasons for his report. There may be occasions when examination of a master is in order. But, generally, the trial court controls interrogation of witnesses and we will reverse only for an abuse of discretion. NDREv 611.

■ Zajac also contended the court surrendered its decision-making authority to the master. We disagree. In the order of reference, the court clearly reserved the "right to determine the legal effect of any and all transactions between the parties." The trial court obviously did so.[5]

WE AFFIRM.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

---

appointed, the master may proceed ex parte or, in his discretion, adjourn the proceedings to a future day, giving notice to the absent party of the adjournment."

5. For example:
"THE COURT: Is that a legal issue strictly?
"MR. SANDSMARK: Yes.
"THE COURT: Isn't that, Mr. Corwin?
"MR. CORWIN: It certainly involves legal issues, Your Honor.
"THE COURT: But that's something, then, that we can take care of at trial, is it not?

"MR. CORWIN: I would say so, yes, sir.
"THE COURT: Okay. I don't know that—you see, in that instance he may be erroneous. But he is allowing it as a setoff. And I should be the one doing that if it's to be a setoff. He has established the amount.
"MR. SANDSMARK: The amount, yes, Your Honor.
"THE COURT: Whether it's to be a setoff I'll decide."