**Michael L. BENSON, Plaintiff and Appellee,**

v.

**Judith Warner BENSON, Defendant and Appellant.**

**Civ. No. 920106.**

Supreme Court of North Dakota.

Jan. 22, 1993.

William D. Yuill (argued), William D. Yuill Law Offices, Fargo, for plaintiff and appellee.

William Kirschner (argued), Kirschner Law Office, Fargo, for defendant and appellant.

RALPH J. ERICKSTAD, Surrogate Judge.[1]

Judith Warner Benson appeals from a district court order denying her motion to move, with her child, Patrick, out of North Dakota. We reverse and remand with directions.

Michael L. Benson and Judith were married in 1982. They lived in Fargo. Their son, Patrick, was born on September 4, 1986. Michael and Judith were divorced in October 1988 pursuant to a stipulation and property settlement agreement approved and adopted by the district court. The divorce decree specified that Michael and Judith "have joint legal custody" of Patrick, with Judith responsible for his "physical care and custody." The decree further provided:

> "As to the parents' understanding of the term 'physical custody,' [Michael] and [Judith] shall have a shared parenting schedule with [Michael] having [Patrick] in the secondary home 40 percent of the time and [Judith] having [Patrick] in the primary home 60 percent of the time."

The visitation schedule "which comprises [Michael's] 40 percent time share arrangement" included every other weekend from Friday afternoon until Monday morning; every Tuesday evening through Wednesday morning; alternate weeks from June through August of each year until Patrick was four years old and then alternate two week periods; one week during the Christmas school vacation period; and alternate designated holidays. Michael paid $500 per month child support. The decree also provided that "[n]either party shall remove [Patrick] from ... North Dakota for the purpose of changing [Patrick's] place of residence without the written consent of the other party, or until further order of the Court."

At the time of the divorce Judith was working at Fargo and attending college on a part-time basis. Michael's visitation proceeded satisfactorily. Judith completed her masters degree in business administration and worked for a short time at a temporary job in the Fargo area. After examining job opportunities in the Fargo area, she decided her best job possibilities would be in the Twin Cities area. In October 1991 Judith left Fargo with Patrick to stay in Elk River, Minnesota, with a high school classmate, Roger Orluck, so she could be closer to prospective employment and job interviews in the Twin Cities area.

Michael then moved for change of physical custody. Judith responded with a motion to allow her to move Patrick out of state. Pursuant to a standing order of reference,[2] the motions were heard by a judicial referee. Based on numerous affidavits and Judith's testimony, the referee found that it "is in the best interests of ... Patrick that he be allowed to move with his mother to the Twin Cities area." The referee reasoned that Judith "examined appropriate job opportunities in the Fargo–Moorhead area," that Judith was offered two jobs as a sales representative in the Twin Cities area and that one of them "would give her considerable flexibility in her time and would allow her to spend more time with her child," and that Judith "would have significant employment benefits which would become effective very shortly after she accepts the position." The referee recognized that "[b]oth parties agree that maximum contact with both parents is

1. Surrogate Judge Ralph J. Erickstad was Chief Justice at the time this case was heard and serves as surrogate judge for this case pursuant to Section 27–17–03, N.D.C.C.

2. The order of reference, dated July 15, 1991, provides in part:
> "Pursuant to the provisions of Section 27–05–30 NDCC and of Administrative Rule 13, Section 5(d), the undersigned Judges of the East Central Judicial District hereby authorize Janice Benson Johnson, Judicial Referee of the East Central Judicial District, to preside in all proceedings held pursuant to:

> "1. Title 14 NDCC, except:
> "(a) Contested trials (including default or stipulated) pursuant to Chapters 14–04, 14–05, and 14–06, NDCC,
> "(b) Adoption proceedings pursuant to Chapter 15 NDCC,
> "(c) Contested trials under Section 14–17 NDCC,
> "(d) Proceedings under Chapters 14–01 and 14–02 NDCC;
> "2. Chapter 27–20 NDCC; and
> "3. Chapter 28–25 NDCC."

desirable" and that Michael "has had a good relationship with his young son and has exercised his visitation rights fully." The referee noted that "[t]here is no way to guarantee the expressed desire of the parties to divide their time 60 percent for [Judith] and 40 percent for [Michael] with their child, unless they both live in the same community," but that "[a] visitation scheme can be effected which will approach the intentions expressed in the [divorce decree].... Given the mobile nature of our society ... it is reasonable to allow [Judith's] move to the Twin Cities so long as [Michael's] visitation opportunities are maximized." The referee also noted that Judith, if not allowed to move to the Twin Cities, planned to move to western North Dakota "where her family lives" and that a move there "would impose an even greater hardship on the visitation schedule" than would a move to the Twin Cities area. The referee found that Patrick's "home life promises to remain stable and very similar to what it has been with the additional benefit of [Judith's] satisfactory employment. It is true that the move will mean some additional separation from some of [Patrick's] extended family who live in the Fargo–Moorhead area, but it appears that there are some relatives and family friends in the Twin Cities area also."

The referee recommended granting Judith's motion to move out of state and set forth minimum visitation requirements for Michael. The referee ordered 10 weeks of summer visitation for Michael, an additional two weeks during school vacation times, 20 weekends throughout the rest of the year, and "liberal visitation with [Patrick] whenever Michael is in the Twin Cities area upon reasonable notice to Judith." The referee also ordered that the parties mutually arrange transportation for Patrick so that Michael bears no more than one-half of the burden for visitation travel.

Michael filed a request for review with the district court, alleging that there was no evidence to support several of the referee's findings. Based on its review of the record compiled before the referee, the district court vacated the referee's decision and denied Judith's motion to move with Patrick out of state. Noting the "somewhat unique custody arrangement for the minor child," the district court said:

"[The parties 60 percent–40 percent] split custody arrangement continued to be followed until [Judith], without notice to [Michael] or permission of the Court, moved her residence to Elk River, Minnesota, in October, 1991.

"The Court is satisfied that the Referee in making a recommendation to allow [Judith] to move her residence is in error. [Judith] has violated the terms of the custodial agreement and deprived [Michael] of his custodial rights. There is little evidence that it would be in the best interests of the child to allow this move; to the contrary, there is ample evidence that it is in the best interests of [Patrick] that he continue to make his home in Fargo."

Judith appealed to this court, asserting that the referee's decision to allow her and Patrick to move to the Twin Cities is not clearly erroneous and that the district court's contrary decision should therefore be reversed. Michael asserts that the referee's decision is clearly erroneous and that the district court's contrary decision is not.[3] At the outset, then, we must examine the powers, duties, and limitations, if any, of a district court when reviewing the findings and decision of a judicial referee in a domestic relations case.

3. Michael did not assert before the referee, the district court, or this court that, in view of the joint custody arrangement agreed to by the parties and incorporated in the divorce decree, Judith's proposed move with Patrick to the Twin Cities area and its resulting effect on Michael's "shared parenting schedule" would constitute a modification of the custody provisions of the divorce decree requiring Judith to show not only that the move is in Patrick's best interests, but also that there has been a significant change of circumstances since the original divorce decree was entered. *See, e.g., Anderson v. Anderson,* 448 N.W.2d 181, 182 (N.D.1989). Because the parties have neither raised nor addressed this issue, we do not resolve it in this case.

Judith asserts that, where, as here, the district court's review of a referee's findings and recommendations is based solely on the evidence compiled before the referee, the district court, pursuant to Rule 53(f)(2), N.D.R.Civ.P., must accept the referee's findings of fact unless the court determines that they are clearly erroneous under Rule 52(a), N.D.R.Civ.P.[4] Michael asserts that we should adopt the Minnesota approach in domestic relations cases referred to a judicial referee and determine that Rule 53(f)(2) is inapplicable under these circumstances and that the trial court is completely free to exercise its independent judgment based on its own view of the evidence. *See, e.g., Peterson v. Peterson,* 308 Minn. 297, 242 N.W.2d 88 (1976). For the reasons which follow, we agree with Judith's argument.

In 1985 the legislature enacted § 27–05–30, N.D.C.C., which authorizes district courts to "assign a referee to preside in any case or proceeding provided for in title 14, chapter 27–20, and chapter 28–25 pursuant to rules of the supreme court." Under the authority granted by Art. VI, § 3, N.D. Const., and § 27–05–30, this court promulgated Rule 13 of the North Dakota Supreme Court Administrative Rules and Administrative Orders to "provide for the qualifications, the extent and assignment of authority, procedure and the conduct of the role of judicial referees within the North Dakota Judicial System in each judicial district." Administrative Rule 13, § 2. Although Administrative Rule 13 addresses the procedure for review of a judicial referee's findings and recommendations, it does not set forth a *standard* of review for the

district courts to employ, as did its predecessor, former Administrative Rule 13.[5] Section 11 of Administrative Rule 13 currently provides:

"*Section 11. Procedure for Review.*

"(a) A review of the findings and recommendations may. be ordered at any time by a district court judge and shall be ordered if a party files a written request for a review within three days after receiving the notice in Section 10(b). The request for review shall state the reasons for the review.

"(b) *The review by a district court judge shall be a review of the record, unless the court orders a hearing of the proceeding.*" [Emphasis added.]

Administrative Rule 13 was largely the product of the Family Caselaw Referee Study Subcommittee of the Court Services Administration Committee. The history of the rulemaking proceedings indicates that a standard of review was intentionally left unstated in Administrative Rule 13. Although it was suggested that Section 11 refer to "the 'clearly erroneous' standard" because "this standard has been applied as a matter of custom," "[t]here was general agreement that there should be no standard of review statement in the rule and that this matter should be left to the Supreme Court in the case law." Minutes of the Family Caselaw Referee Study Subcommittee of the Court Services Administration Committee, January 11, 1985, at p. 6. One of the final recommendations of the subcommittee, however, was to request the Court Services Administration Committee "to cooperate with the Joint Procedure

---

**4.** Rule 53(f)(2), N.D.R.Civ.P., which relates to masters and referees in general, provides in part:

"*(2) In nonjury actions.* In an action to be tried without a jury, the court shall accept the master's findings of fact unless clearly erroneous.... The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

**5.** Former Administrative Rule 13, entitled "Rules of District Court Relating to the Assignment of Additional Duties to Juvenile Supervisors Pursuant to Sec. 27–05–29, N.D.C.C.," spe-

cifically incorporated Rule 53, N.D.R.Civ.P., into the review procedure:

"*Rule 5. Review and Confirmation of Findings and Recommendations.* A review of the findings and recommendations pursuant to Rule 53 of the North Dakota Rules of Civil Procedure may be ordered at any time by the judge and shall be ordered if a party files written request therefor within three days after receiving the notice required in Rule 4(e) hereof which must also inform them of this right. Unless a review is ordered, the findings and recommendations become the findings and order of the court upon confirmation in writing by the judge."

Committee to implement procedural rules regarding the legal effect of judicial referee findings and recommendations, removal of referees, and *review of judicial referee findings and recommendations.*" [Emphasis added.] The need for implementation of a rule by the Joint Procedure Committee was recognized when the subcommittee presented proposed Administrative Rule 13 to the full Court Services Administration Committee. *See* Minutes of the Court Services Administration Committee, May 17, 1985, at p. 3. This court adopted Administrative Rule 13 as an emergency rule effective June 13, 1985, in order to have a rule in place when § 27–05–30, N.D.C.C., became effective, and later readopted the rule on September 17, 1985. The Joint Procedure Committee, however, did not recommend to this court a rule implementing a standard for review of judicial referee findings and recommendations.[6] Thus, we are left without a clear statement by rule of what standard of review governs a district court's review of a referee's findings and recommendations.

Nevertheless, the history of the rulemaking proceedings does provide some guidance. In presenting Administrative Rule 13 to the Court Services Administration Committee, the chairman of the subcommittee emphasized that there "was no intent . . . to make major changes in present practice." Minutes of the Court Services Administration Committee, May 17, 1985, at p. 2. As noted earlier, that practice provided for review under Rule 53, N.D.R.Civ.P., and the clearly erroneous standard. *See* Footnote 4, *supra; Guskjolen v. Guskjolen,* 391 N.W.2d 639, 641 (N.D.1986). We prefer this approach over the de novo review procedure employed in Minnesota. If a district court must essentially duplicate the effort and dedication of time of a judicial referee in order to ultimately decide a domestic relations case, it is difficult to comprehend what, if anything, has been gained by referral to the referee. Also, a

judicial referee has all of the authority of a district judge necessary to carry out delegated duties and must observe the Rules of Judicial Conduct. *See* Administrative Rule 13, §§ 5(b) and 9. Under these circumstances, a judicial referee, "as a judicial officer, must as a general proposition be trusted as to factual matters, particularly those involving oral and disputed testimony." 5A *Moore's Federal Practice* ¶ 53.-12[4], at p. 53–120 (2d ed. 1992) [Footnotes omitted.] Just as this court may not set aside a finding of fact of a trial court merely because we may have viewed or weighed the evidence differently [*see, e.g., Berg v. Berg,* 490 N.W.2d 487, 491 (N.D. 1992)], "the same relationship must exist between the district court and the findings of a" referee. 5A *Moore's Federal Practice, supra,* at p. 53–121.

■ We therefore conclude that a district court's review of a judicial referee's findings and recommendations under Administrative Rule 13, § 11(b), when it is a review of the record, is governed by Rule 53, N.D.R.Civ.P.

■ Related to the district court's standard of review of a referee's findings is this court's standard of review of a district court decision which rejects findings of a judicial referee. Although the issue has not been previously addressed by this court, we adopt the logical two-step approach taken by several federal courts that have considered the question. First, we must review, as a matter of law, the correctness of the district court's reversal, under the clearly erroneous standard, of any factual findings by the judicial referee. Second, if the district court's reversal of findings is upheld, we must then review the substitute or additional findings of the district court under the clearly erroneous standard of Rule 52(a), N.D.R.Civ.P. *See, e.g., Martin v. University of South Alabama,* 911 F.2d 604, 608 (11th Cir.1990);

---

**6.** The Joint Procedure Committee's failure to act on the matter was apparently prompted by the suggestion of a committee member who also served as a member of the Family Caselaw Referee Subcommittee. According to the minutes, "since Administrative Rule 13 was adopted [by the Supreme Court] he does not feel that this subject needs to be addressed by the Joint Procedure Committee. The committee decided not to address the matter any further." Minutes of the Joint Procedure Committee, January 23, 1986, at p. 9.

*Milliken Research Corp. v. Dan River, Inc.*, 739 F.2d 587, 592–593 (Fed.Cir.1984); *Matter of Multiponics, Inc.*, 622 F.2d 709, 722–723 (5th Cir.1980).

■ In this case our appellate function is hampered because it appears that the district court employed an incorrect standard in rejecting the referee's findings and because the district court failed to make adequate substitute findings to support its contrary decision.

■ Under Rule 53(f)(2), N.D.R.Civ.P., the district court was obliged to accept the referee's findings unless they were clearly erroneous. *See Dakota Grain Systems, Inc. v. Rauser*, 435 N.W.2d 205, 209 (N.D. 1989). "The 'clearly erroneous' standard here applied is exactly the same as the standard governing review by" this court of findings of fact by a district court. 9 Wright & Miller, *Federal Practice and Procedure: Civil* § 2614, at p. 809 (1971). Whether a custodial parent has established, under § 14–09–07, N.D.C.C., that a change of residence is in a child's best interest is a finding of fact that cannot be disturbed unless clearly erroneous. *E.g., Thomas v. Thomas*, 446 N.W.2d 433, 434 (N.D.1989); *Novak v. Novak*, 441 N.W.2d 656, 657 (N.D.1989); *Hedstrom v. Berg*, 421 N.W.2d 488, 490 (N.D.1988); *Olson v. Olson*, 361 N.W.2d 249, 251 (N.D.1985). The correctness of a referee's findings is an issue that must be determined by the district court in the first instance. *Livas v. Teledyne Movible Offshore, Inc.*, 607 F.2d 118, 119 (5th Cir.1979).

■ Here, the trial court did not specifically determine that any of the referee's findings were clearly erroneous. Rather, the district court simply reweighed the record evidence and reached a contrary determination. Where the referee's findings adequately explain the reasons for the ultimate finding on the best interests of the child, we believe that the district court must articulate its reasons for determining those findings clearly erroneous in detail sufficient to enable us to accomplish a meaningful review. *See generally Yates v. Mobile County Personnel Bd.*, 719 F.2d 1530, 1532–1533 (11th Cir.1983); *cf. Kack-*

*man v. N.D. Workers' Comp. Bureau*, 488 N.W.2d 623, 625 (N.D.1992) [administrative agency must adequately explain its rationale for not following a hearing officer's recommendations]; *Schultz v. North Dakota Dept. of Human Services*, 372 N.W.2d 888, 892 (N.D.1985) [same]. In this case, the district court did not explain why the referee's findings were clearly erroneous.

■ Moreover, even if we assume that the district court implicitly determined that all of the referee's findings were clearly erroneous, the district court made no substitute findings that are adequate to support its contrary decision that the move would not be in Patrick's best interests. A trial court's findings of fact must adequately explain the basis for its decision. *See Spilovoy v. Spilovoy*, 488 N.W.2d 873, 877 (N.D.1992). Essentially, the district court simply found that it is in Patrick's best interests that he continue to live in Fargo. However, a trial court must specifically state subordinate facts upon which its ultimate factual conclusions rest. *See Radspinner v. Charlesworth*, 346 N.W.2d 727, 730 (N.D.1984). On this record, we are unable to discern the basis for the district court's decision. *See Garbe v. Garbe*, 467 N.W.2d 740, 744 (N.D.1991); *Federal Land Bank of St. Paul v. Lillehaugen*, 404 N.W.2d 452, 459 (N.D.1987).

Accordingly, we reverse the order of the district court and remand to that court for review of the referee's findings under the clearly erroneous standard. If the district court determines that the findings are clearly erroneous, we direct that the court make more detailed substitute findings to enable us to understand the basis for its contrary decision.

VANDE WALLE, C.J., and MESCHKE, J., concur.

LEVINE, J., and VERNON R. PEDERSON, Surrogate Judge, concur in result.

VERNON R. PEDERSON, Surrogate Judge, sitting. Justice J. PHILIP JOHNSON, who was a member of the Court

when this case was heard, deemed himself disqualified and did not participate in this decision.

Justice NEUMANN and Justice SAND-STROM, not being members of the Court when this case was heard, did not participate in this decision.