Nancy RUECKERT, Plaintiff
and Appellee,

v.

Kevin Mark RUECKERT, Defendant
and Appellant.

Civ. No. 920238.

Supreme Court of North Dakota.

May 11, 1993.

Mark A. Beauchene (argued), of Brothers & Beauchene, Fargo, for plaintiff and appellee.

Naomi Paasch (argued), of Strehlow, Bryan & Paasch, Casselton, for defendant and appellant.

Michele G. Johnson, Asst. Atty. Gen., Bismarck, for amicus curiae State of N.D. Submitted on brief.

NEUMANN, Justice.

Kevin Mark Rueckert appeals from a district court order confirming a judicial referee's denial of his motion to modify Nancy Rueckert's child support obligation. We reverse and remand for further proceedings.

Nancy and Kevin were divorced on August 4, 1987. At that time, Kevin was earning about $19,000 per year at a grain elevator in Ayr, North Dakota, and Nancy was earning "less than minimum wage, plus tips" at a part-time job at a restaurant in Fargo. Pursuant to a stipulation between the parties, the divorce decree granted Kevin physical custody of the couple's two minor children and provided that "[i]n lieu of child support, [Nancy] makes no claim to and [Kevin] is awarded the trailer home and lots located in Ayr, North Dakota, and relinquishes any interest she has in [Kevin's] pension."

In June 1988, Kevin lost his job at the grain elevator. In August 1988, Nancy and Kevin attempted to reconcile, and they both enrolled in college in Wahpeton. Because Kevin lived in a dormitory, he allowed the two children to live with Nancy in family housing. The parties' reconciliation efforts were unsuccessful, and Kevin moved to Moorhead in the fall of 1988. However, he allowed the children to remain with Nancy and asked the court for permission to move them to Moorhead after the school year. Nancy then indicated that she intended to move for a change in custody, and a referee granted Kevin's motion to move the children to Moorhead, pending consideration of Nancy's motion for change of custody.

In September 1989, the parties stipulated to mediation of their custody dispute, but those efforts were also unsuccessful. Thereafter, in the fall of 1990, Kevin resisted Nancy's pending motion for change of custody and sought child support from her. At that time, Nancy had graduated from college with a degree as a medical records technician, and she was earning about $225 per month as a part-time employee at K-Mart. Also, in August 1989, Nancy and another man had a child out-of-wedlock. Meanwhile, Kevin had enrolled in an accounting program at Moorhead State University, and had married Rita Kossick. Rita had two children from a previous marriage, and she and Kevin had a child in October 1990.

On January 18, 1991, the district court entered an order denying Nancy's motion for change of custody and Kevin's motion for child support. The court said that the waiver of child support in the original divorce decree was "contrary to North Dakota law and should not have been approved by this Court. However, it was the parties' agreement, and at this time the Court will honor this provision and deny [Kevin's] request for child support until such time as [Kevin] can demonstrate a significant change of circumstances."

On January 7, 1992, Kevin filed a motion to require Nancy to pay the amount of child support required by the guidelines promulgated by the North Dakota Department of Human Services. *See* Chapter 75-02-04.1, N.D.A.C. At that time, Kevin was still enrolled in an accounting program at Moorhead State University. According to Kevin, the assets from his marriage to Nancy had been sold to pay bills and support the children from that marriage. According to Kevin, his sole source of support was Rita's $1,000 per month net income and their monthly expenses were about $1,145. Nancy was earning about $770 per month at St. Luke's Hospital. She testified

that she lived with the father of her out-of-wedlock child and that she paid their entire rent. According to Nancy, her monthly expenses, including rent, were about $850.

A judicial referee found that, since January 1991, Nancy had not incurred a material change in circumstances to warrant a modification of child support, and that, at the same time, the needs of Nancy's out-of-wedlock child, a factor not considered by the child support guidelines, resulted in monthly expenditures that exceeded her net income. On February 18, 1992, the referee denied Kevin's motion to modify Nancy's child support, and the district court confirmed the referee's decision on February 26, 1992.

On February 26, 1992, and before Kevin had received the district court's confirmation of the referee's decision, he mailed a request for review of the referee's decision to the district court. Kevin's request was filed in the district court on February 28, 1992. The district court thereafter concluded that Kevin's request for review was not timely, and, alternatively, that the referee's decision was not clearly erroneous. Kevin appeals.

Kevin contends the district court erred in determining that his request for review of the judicial referee's decision was not timely. He asserts that his request for review was timely under either the three-day period of Rule 13, § 11(a), North Dakota Supreme Court Administrative Rules and Administrative Orders (AR 13),[1] or the ten-day period of Rule 53(f)(2), N.D.R.Civ.P.[2]

We initially consider which rule governs the time for district court review of decisions by a judicial referee. In construing rules of court, we are guided by principles of statutory construction. *Walker v. Schneider*, 477 N.W.2d 167 (N.D.1991). If there is an irreconcilable conflict between a general and a special statute, the special statute prevails. Section 1–02–07, N.D.C.C.; *Shafer v. Job Service North Dakota*, 464 N.W.2d 390 (N.D.1990); *State v. Brandon*, 413 N.W.2d 340 (N.D.1987).

In 1985 the Legislature enacted Section 27–05–30, N.D.C.C., which, pursuant to supreme court rule, authorizes district courts to "assign a referee to preside in any case or proceeding provided for in title 14, chapter 27–20, and chapter 28–25." Pursuant to that statutory authority and Art. VI, § 3, N.D. Const., this court promulgated AR 13 to govern the procedure for proceedings referred to judicial referees under Section 27–05–30, N.D.C.C.

In contrast, Rule 53, N.D.R.Civ.P., is a special-purpose rule of civil procedure which authorizes appointment of a special master for complex matters. *Dakota*

---

1. AR 13 provides, in part:

"*Section 10. Recommendations.*

"(a) The findings and recommendations of the judicial referee are deemed to have the effect of an order of the district court until superseded by a written order of a district court judge.

"(b) Upon the conclusion of a hearing before a judicial referee, the judicial referee shall promptly transmit written findings and recommendations for disposition to the judge. Written notice and copies of the findings and recommendations together with written notice of the right of review shall be promptly given to the parties.

"(c) In the absence of a review pursuant to Section 11, a district court judge shall confirm, modify, or reject the findings and recommendations of the judicial referee in a written order of the court.

"*Section 11. Procedure for Review.*

"(a) *A review of the findings and recommendations* may be ordered at any time by a district court judge and *shall be ordered if a party files a written request for a review with-*

in three days after receiving the notice in Section 10(b). The request for review shall state the reasons for the review.

"(b) The review by a district court judge shall be a review of the record, unless the court orders a hearing of the proceeding." [Emphasis added].

2. Rule 53(f)(2), N.D.R.Civ.P., provides:

"(2) *In Non-jury Actions.* In an action to be tried without a jury, the court shall accept the master's findings of fact unless clearly erroneous. Within 10 days after being served with notice of the filing of the report any party may serve upon the other parties written objections to the report. Application to the court for action upon the report and upon objections thereto must be by motion and upon notice as prescribed in Rule 6(d). The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

*Grain Systems, Inc. v. Rauser*, 435 N.W.2d 205 (N.D.1989). Reference to a special master is the "exception and not the rule," and in non-jury actions, "reference may be made only upon a showing that some exceptional condition requires it." Rule 53(b), N.D.R.Civ.P.

At oral argument, counsel for Kevin indicated that this proceeding was referred to the judicial referee under a standing order of reference issued pursuant to AR 13 and Section 27–05–30, N.D.C.C. In *Benson v. Benson*, 495 N.W.2d 72 (N.D.1993), we considered a similar standing order of reference in the East Central Judicial District. We held that, because AR 13 did not specify a standard for district court review of decisions by judicial referees appointed under AR 13 and Section 27–05–30, N.D.C.C., the clearly erroneous standard of Rule 53(f)(2), N.D.R.Civ.P., governed when the district court review was a review of the record.

In *Benson*, there was no irreconcilable conflict in the standard of review under AR 13 and under Rule 53, N.D.R.Civ.P. However, in this case there is an irreconcilable difference in the time frame for filing a request for judicial review of a decision of a judicial referee under AR 13 and for serving written objections to the report of a master under Rule 53, N.D.R.Civ.P. Because AR 13 is a special rule for appointment of judicial referees under Section 27–05–30, N.D.C.C., AR 13 governs the time for seeking district court review of a judicial referee's decision. Section 1–02–07, N.D.C.C.; *State v. Brandon, supra.*

■ AR 13, § 11(a) requires district court review of a judicial referee's decision if a party "files a written request for a review within three days after receiving the notice in Section 10(b) [of the referee's findings and recommendations together with written notice of the right to review]." In this case, the judicial referee's decision was rendered on February 18, 1992. Assuming that Kevin had three additional days after service of the referee's decision by mail [Rule 6(e), N.D.R.Civ.P] and not counting the intervening weekend [Rule 6(a), N.D.R.Civ.P.], Kevin had until February 26, 1992, to *file* a request for judicial review. The record reflects that Kevin *mailed* his request for judicial review on February 26, 1992, and that it was *filed* in the district court on February 28, 1992. Kevin argues that "[s]ince [his] Request for Review and Brief in Support of same were mailed on February 26, 1992, and service is complete upon mailing [under Rule 5(b), N.D.R.Civ.P.], his Request for Review was timely filed and the District Court erred in finding it was not."

Kevin's argument ignores the difference between service by mail, which is complete upon mailing, and filing, which requires actual receipt. *See Dehn v. Otter Tail Power Co.*, 248 N.W.2d 851 (N.D.1976); *Moe v. Moe*, 460 N.W.2d 411 (N.D.Ct.App. 1990); *see also Blades v. United States*, 407 F.2d 1397 (9th Cir.1969); *Holmes v. Navajo Freight Lines, Inc.*, 488 S.W.2d 311 (Mo.Ct.App.1972); *Dudukovich v. Lorain Metropolitan Housing Authority*, 58 Ohio St.2d 202, 389 N.E.2d 1113 (1979). Kevin's request for district court review was not filed until February 28, 1992, and was not timely under AR 13, § 11(a).

■ Although Kevin did not file a timely request for district court review of the referee's decision, he is not precluded from seeking appellate review of the district court's confirmation of the referee's decision. AR 13, § 10(c) provides that "[i]n the absence of a review pursuant to Section 11, a district court judge shall confirm, modify, or reject the findings and recommendations of the judicial referee in a written order of the court." Under that provision, approval of a referee's decision is not automatic, and, as with Rule 53, N.D.R.Civ.P., the district court may consider whether the referee's findings are clearly erroneous under Rule 52(a), N.D.R.Civ.P. *See Benson, supra.* In conjunction with that clearly erroneous standard, Rule 52(b), N.D.R.Civ.P., provides that "[w]hen findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the district court an objection to such findings

or has made a motion to amend them or a motion for judgment."

Under similar authority, other courts have concluded that the failure to object to a master's findings does not preclude appellate review of the master's decision. *Bingham Pump Co. v. Edwards,* 118 F.2d 338 (9th Cir.1941); *Seccombe v. Weeks,* 115 Idaho 433, 767 P.2d 276 (1989). *See* 5A Moore's Federal Practice ¶ 53.11 (1993). We conclude that Kevin's failure to file a timely request for district court review of the referee's decision does not preclude him from seeking appellate review of the referee's decision.

Kevin makes several arguments relating to whether the referee erred in not ordering Nancy to pay child support. He asserts that the referee applied the wrong time period for determining whether a material change in circumstances had occurred. He also argues that the referee erred in determining that factors not considered by the child support guidelines adversely affected Nancy's ability to pay support and rebutted the guideline presumption by creating an undue burden on her. The underlying basis for those arguments is that the parties' stipulation about child support in the original divorce decree is invalid. However, Nancy argues that the parties' stipulation waiving her right to certain marital property "in lieu of child support" is valid. Accordingly, we consider the validity of the parties' stipulation about child support.

Section 14–09–08, N.D.C.C., recognizes the mutual duty of each parent to provide their children with support and education suitable to the children's circumstances. Under Section 14–05–24, N.D.C.C., it is well established that a court does not have continuing jurisdiction to modify a property distribution in a divorce judgment [*Kuehl v. Lippert,* 401 N.W.2d 523 (N.D.1987)], but has continuing jurisdiction to modify child support. *Tiokasin v. Haas,* 370 N.W.2d 559 (N.D.1985); *Skoglund v. Skoglund,* 333 N.W.2d 795 (N.D. 1983); *Eisenbarth v. Eisenbarth,* 91 N.W.2d 186 (N.D.1958). *Cf. Eberhart v. Eberhart,* 301 N.W.2d 137 (N.D.1981) [If

there is a change in circumstances, Section 14–05–24, N.D.C.C., authorizes court to modify spousal support payments made pursuant to a stipulation between the parties]. Section 14–17–17, N.D.C.C., also gives courts continuing jurisdiction to modify child support in paternity actions. *State of Minnesota v. Snell,* 493 N.W.2d 656 (N.D.1992); *see Schaff v. Schaff,* 446 N.W.2d 28 (N.D.1989).

On the other hand, we have recognized that divorce stipulations concerning support are governed by contract law. *Redlin v. Redlin,* 436 N.W.2d 5 (N.D.1989). We have thus said that courts should be more reluctant to modify a divorce decree where the decree is based upon a stipulation between the parties than where the decree is based on a finding of the court as to ability to pay. *Eberhart, supra.* Those authorities reflect conflicting considerations regarding a court's continuing jurisdiction to modify child support and the effect of the parties' stipulation for the distribution of certain marital property in lieu of child support.

Although we encourage settlements in divorce actions [*Seablom v. Seablom,* 348 N.W.2d 920 (N.D.1984)], "[w]e take a dim view of agreements purporting to sign away the rights of a child in support settings—not from a contractual background, but from a public policy one.... Due to the nature of domestic relations, we do not analyze transactions and compromises between the parties in a cold contractual frame—public policy plays a large role in determining the factors of which parties may contract in domestic relations settings." *State of Minnesota v. Snell, supra,* 493 N.W.2d at 657, 659.

In *Tiokasin v. Haas, supra,* we said that because of the strong public policy for support and maintenance of minor children that is embodied in our statutes and case law, a trial court is not required to accept a parental stipulation regarding the custody and maintenance for children of a marriage if the court finds that the stipulation is not in the best interests of the children. In *Tiokasin,* we held that because the record reflected a continued need for child sup-

port, the trial court did not err as a matter of law in rejecting a parental stipulation which would have eliminated a non-custodial parent's child support obligation.

Our statutes and case law thus recognize that, within the context of the best interests of the children, a court has continuing jurisdiction to modify child support even if the amount has been set by agreement between the parents. *State of Minnesota v. Snell, supra; Tiokasin v. Haas, supra.* Other courts have similarly recognized the strong public policy for adequate support and maintenance for minor children and have uniformly held that parental agreements prohibiting or limiting the power of a court to modify future child support violate that public policy and are invalid. *In re Marriage of Miller,* 790 P.2d 890 (Colo. Ct.App.1990); *Lang v. Lang,* 252 So.2d 809 (Fla.Dist.Ct.App.1971); *Collins v. Collins,* 172 Ga.App. 748, 324 S.E.2d 475 (1984); *In re Burks,* 100 Ill.App.3d 700, 56 Ill.Dec. 273, 427 N.E.2d 353 (1981); *Phillips v. Phillips,* 163 Kan. 710, 186 P.2d 102 (1947); *Mund v. Mund,* 252 Minn. 442, 90 N.W.2d 309 (1958); *Grimes v. Grimes,* 621 A.2d 211 (Vt.1992). *See* 27C CJS, *Divorce* § 720 (1986).

■ Because our statutes and case law also embody that strong public policy for adequate support and maintenance of minor children, we hold that parental agreements that prohibit or limit the power of a court to modify future child support are invalid. We therefore conclude that the child support stipulation violates public policy and is invalid.

■ However, Nancy asserts that the referee's decision is sustainable because the referee found no material change in circumstances since January 1991. Kevin argues that the referee erred in requiring him to show a material change in circumstances since the January 1991 order denying his motion to modify Nancy's child support obligation. He asserts that the correct time frame for measuring a material change in circumstances is from either the original decree, or an actual modification. We agree.

A determination on a motion to modify child support is treated as a finding of fact, and our review is subject to the clearly erroneous standard of Rule 52(a), N.D.R.Civ.P. *Woolridge v. Schmid,* 495 N.W.2d 52 (N.D.1993). A finding of fact is clearly erroneous if, although there is some evidence to support it, a reviewing court, on the entire record, is left with a definite and firm conviction that a mistake has been made, or if it was induced by an erroneous view of the law. *Wayne–Juntunen Fertilizer v. Lassonde,* 474 N.W.2d 254 (N.D. 1991); *Diemert v. Johnson,* 299 N.W.2d 546 (N.D.1980).

In considering whether a change in circumstances has occurred, we have said that attention must be given to whether a change was foreseen or contemplated at the time of the initial divorce decree, or any subsequent modification. *Sweeney v. Hoff,* 478 N.W.2d 9 (N.D.1991); *Cook v. Cook,* 364 N.W.2d 74 (N.D.1985); *Muehler v. Muehler,* 333 N.W.2d 432 (N.D.1983). Our decisions have thus suggested that the time for determining whether a material change in circumstances has occurred is from either the original divorce decree, or any actual modification. Other courts that have considered this issue have so held. *Rowe v. Boley,* 392 So.2d 838 (Ala.Civ.App. 1980), *aff'd,* 392 So.2d 840 (1981); *Blomgren v. Blomgren,* 386 N.W.2d 378 (Minn. App.1986); *Lutz v. Lutz,* 58 Or.App. 122, 647 P.2d 954 (1982).

In *Rowe v. Boley, supra,* 392 So.2d at 840, the Alabama Court of Civil Appeals aptly explained the rationale for employing that time frame:

"Although we have been unable to find any specific authority for the proposition that a trial court in deciding a child support modification petition is limited to the period since the last decree, whether it be one denying the modification petition or one modifying a prior child support decree, we think the rationale of the above cited cases persuasively suggests that the period within which the changed circumstances must have occurred extends back to the decree awarding child support or to the last decree modifying child support. Otherwise, a situation could oc-

cur, as did occur in the instant case, where the request for modification was denied because there were insufficient changed circumstances during the short period since the last modification petition was denied, whereas if the court could have considered those circumstances that had occurred since the child support award was made, it is likely that a different result would have been reached. The welfare of the children cannot be properly served without consideration of the totality of circumstances since they last received an order for support. The primary consideration is the need of the children. If the needs of the children and the ability of the father to respond to those needs have materially changed since the last award fixing the amount of support, the trial court should be able to consider those changes in fashioning its decree."

In *Blomgren v. Blomgren, supra,* 386 N.W.2d at 383, Judge Huspeni similarly explained that rationale in a special concurrence:

"The best interests of children in receiving increased support would be served by permitting a trial court to measure a change in circumstances from the date of the last modification (*Wiese[v. Wiese,* 295 N.W.2d 371 (Minn.1980)]) rather than from the date the issue was last before the court, whether or not a modification resulted (*Kiesow[v. Kiesow,* [270 Minn. 374] 133 N.W.2d 652 (Minn. 1965)]). The *Wiese* rationale permits children to benefit from several incremental changes, any one of which upon motion was found insufficient to increase support, but the cumulative effect of which may indeed be substantial."

That rationale about incremental changes in circumstances is persuasive and parallels the important public policy interests involved with providing adequate child support. We hold that the time for determining whether a material change in circumstances has occurred is from the original decree, or any actual modification.

In this case, the original divorce decree was entered in 1987. Kevin's first motion to modify Nancy's child support was denied in January 1991. In 1992, the referee found that "[t]he net result of the parties' situation is that [Nancy], since January 1991, has not had a material change of circumstance ... sufficient to warrant a modification of the Judgment at this time." The referee's finding that there had been no change in circumstances since 1991 was induced by an erroneous view of the law about the time for determining when a material change in circumstances has occurred. The referee's finding that there was no material change in circumstances is, therefore, clearly erroneous.

Nancy nevertheless asserts that the referee's decision is sustainable, because the referee found that "[a]t the same time the needs of [Nancy's] youngest child, a factor not considered by the Child Support Guidelines, result in monthly expenditures that exceed her net income" and concluded that "[e]ven if [her] financial circumstances have changed somewhat, no change in the existing child support arrangement is warranted because factors not considered by the State Child Support Guidelines adversely affect [her] ability to pay at this time, and rebut the guideline presumptions by creating an undue hardship on her." Kevin argues that the referee erred because an obligor's expenses for other children are considered by the child support guidelines.

Section 14-09-09.7(3), N.D.C.C., creates a rebuttable presumption that the child support guidelines [chapter 75-02-04.1, N.D.A.C.] reflect the correct amount of child support, and allows that presumption to be rebutted by evidence that factors not considered by the guidelines would result in an undue hardship on the obligor or supported child.

Section 75-02-04.1-04, N.D.A.C., underscores a policy of requiring parents to pay child support to the extent of the parent's ability, and provides that if an obligor has *any* income, the obligor should provide some minimum level of support, even if the obligor's payment is insufficient to fully meet the children's needs. The child support guidelines provide a schedule for an obligor's monthly payments based upon

"the obligor's monthly net income and the number of children for whom support is being sought in the matter before the court." Section 75–02–04.1–10, N.D.A.C. Net income received by an obligor from all sources must be considered in determining an obligor's child support. Section 75–02–04.1–02(3), N.D.A.C. "Net income" means total gross monthly income from any source, less federal and state tax obligations, health insurance premiums and actual medical expenses for a supported child, certain employee retirement contributions and union dues, certain employee expenses that are not reimbursed by the employer, and payments actually made pursuant to a child support order for a child for whom support is not being sought in the proceeding before the court. Section 75–02–04.1–01(4), N.D.A.C.

The scheduled amount of guideline support considers that one parent acts as primary caregiver and that the other parent contributes child support payments for the child's care. Section 75–02–04.1–02(1), N.D.A.C. The scheduled amount of guideline support also expressly considers "[t]he subsistence needs, work expenses, and daily living expenses of the obligor" and specifically lists factors not considered by the guidelines. Section 75–02–04.1–09, N.D.A.C.[3] The factors specifically not considered by the guidelines in Section 75–02–04.1–09(2), N.D.A.C., do not include the expenses for support of other children. In-stead, the guidelines provide for no deductions from an obligor's income based upon unordered child support. *State of Minnesota v. Snell, supra. See* Section 75–02–04.1–01(4)(e). Thus, the additional living expenses assumed by an obligor who voluntarily has additional children do not constitute "factors not considered by the guidelines" to justify a finding of undue hardship under Section 14–09–09.7(3), N.D.C.C. *Houmann v. Houmann*, 499 N.W.2d 593 (N.D.1993). We conclude that the referee erred in determining that factors not considered by the child support guidelines resulted in an undue hardship on Nancy and rebutted the presumed correct amount of child support in the guidelines.

Accordingly, we remand for consideration of whether a change in circumstances has occurred, and if so, a determination of Nancy's child support obligation after Kevin's motion in January 1992. *See Houmann, supra.* This will require a determination of the value of the marital property relinquished by Nancy "in lieu of child support" in the original decree, a determination of the amount of child support that would have been appropriate from the inception of the original decree to the date of Kevin's motion in January 1992, a computation of Nancy's child support obligation under the guidelines since the date of Kevin's motion, and the offset of the value of the marital property against the child support.[4] We believe these calculations will

---

**3.** Section 75–02–04.1–09, N.D.A.C., provides:

"Factors considered—Not considered.

"1. The child support amount and the calculations provided for under this chapter consider all factors described or applied in this chapter, except those described in subsection 2 and, in addition, consider:

"a. The subsistence needs, work expenses, and daily living expenses of the obligor; and

"b. The income of the obligee, which is reflected in a substantial monetary and nonmonetary contribution to the child's basic care and needs by virtue of being a custodial parent.

"2. The child support guidelines schedule and the calculations provided for under this chapter do not consider:

"a. The increased need in cases where support for more than six children is sought in the matter before the court;

"b. The increased ability of an obligor, with a monthly net income which exceeds ten thousand dollars, to provide child support;

"c. The increased educational costs voluntarily incurred at private schools;

"d. The increased needs of children with handicapping conditions or chronic illness;

"e. The increased needs of children age twelve and older;

"f. The full cost of child care purchased by the obligee;

"g. The value of the income tax exemption for supported children; and

"h. The reduced ability of the obligor to provide support due to travel expenses incurred solely for the purpose of visiting a child who is the subject of the order."

**4.** We realize the trial court cannot retroactively modify accrued but unpaid child support [*Thorlaksen v. Thorlaksen*, 453 N.W.2d 770 (N.D. 1990) ], but that it not what is to be done in this

provide the most equitable means of granting the parties the benefit of their property settlement agreement, while at the same time recognizing the important public policy of placing on both parents responsibility for the adequate support and maintenance of their minor children. *See Monk v. Monk,* 376 So.2d 552 (La.Ct.App.1979). These calculations are a necessary prerequisite to a fair determination of the amount of Nancy's child support obligation, if any, after Kevin's motion in January 1992.

We reverse and remand for proceedings consistent with this opinion.[5]

VANDE WALLE, C.J., and SANDSTROM, J., concur.

MESCHKE, Justice, concurring.

I concur in most of the analysis and in the result. I do not quarrel with the discussion about the time frame for measuring a material change in circumstances, but I believe it is unnecessary in this case. In my view, a temporary statute avoids the need to find a change in circumstances in order to modify child support.

Section 16 of ch. 148, 1989 ND Laws, effective October 1, 1990, as amended by 1991 ND Laws ch. 152, § 1, effective July 7, 1991, created a temporary new section to NDCC ch. 14–09, effective through October 1, 1993. This temporary version is published in the Note below NDCC 14–09–08.4 (effective October 1, 1993) in the North Dakota Century Code. Subsections 3 and 4 of that temporary version are the same as subsections 3 and 4 of NDCC 14–09–08.4 that becomes effective on October 1, 1993. They say:

3. If a child support order sought to be amended was entered at least one year before the filing of a motion or petition for amendment, the court shall order the amendment of the child support order to conform the amount of child support payment to that required under the child support guidelines, whether or not a material change of circumstances has taken place, unless the presumption that the correct amount of child support would result from the application of the child support guidelines is rebutted. If a motion or petition for amendment is filed within one year of the entry of the order sought to be amended, the party seeking amendment must also show a material change of circumstances.

4. A determination that a child who is the subject of a child support order is eligible for benefits furnished under subsection 18 or 20 of section 50–06–05.1, chapter 50–09, or chapter 50–24.1, or any substantially similar program operated by any state or tribal government, constitutes a material change of circumstances. The availability of health insurance at reasonable cost to a child who is the subject of a child support order constitutes a material change of circumstances.

Unlike the opinion by Justice Neumann, which does not refer to this temporary statute, and barely refers to NDCC 14–09–08.4(3) in footnote 5, I would apply subsection 3 here and dispense with the need to find a material change of circumstances to conform the child support to the guidelines.

This child support order was entered more than one year before Kevin moved, on January 7, 1992, to modify the child support. There are enough complications to sort out on remand here, without imposing another one to ascertain a change of circumstances.

LEVINE, J., concurs.

---

case. Here the trial court is to determine a child support obligation which, in effect, has been prepaid, but never before determined.

5. Kevin also argues that the current provisions of temporary Section 14–09–08.4(3), N.D.C.C., violate equal protection if they are interpreted to apply only to motions brought by child support agencies. *See State ex rel. Younger v. Bryant,* 465 N.W.2d 155, 157 (N.D.1991). However, Kevin has presented no facts indicating an equal protection violation, and because of our resolution of the other issues raised by him, we do not address his constitutional argument.